UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF REAL ESTATES INTERNATIONAL S.A.-S.P.F. and MARC BRAUNER for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding | Case No. 14 Misc. 227 |

**MEMORANDUM OF LAW IN SUPPORT
OF CERTAIN SUBPOENAED PARTIES' MOTION TO
(1) VACATE AN EX PARTE ORDER AUTHORIZING DISCOVERY IN
AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782
AND (2) QUASH SUBPOENAS ISSUED AS A RESULT OF THAT ORDER**

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE, LLP
David J. Eiseman
437 Madison Avenue
New York, New York 10022
(212) 907-7300

*Attorneys for Subpoenaed Parties
International Gemological Institute,
Inc., Jerry Ehrenwald, John Li,
Kimberly Nairn, Carol Lorié Low
and Joseph Low*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ........................................................................................................................ 6

I.   Standards for Granting An Application Pursuant to 28 U.S.C. § 1782 ..................... 6

II.  This Court Should Vacate the Order and Quash the Subpoenas ............................... 7

    A.   Petitioners' Section 1782 Application is a Blatant Attempt to Circumvent Luxembourg Proof-Gathering Restrictions............................................................. 7

    B.   The Discovery Sought in the Subpoenas Is A Fishing Expedition ............................... 8

    C.   Luxembourg Does Not Have a Law Equivalent to Section 1782 ............................... 11

CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding,*
2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ................................................................. 10

*In re Ex Parte Shagang Shipping Co., Ltd.,*
2014 WL 1744264 (S.D.N.Y. Apr. 28, 2014) .............................................................. 9, 11

*In re Microsoft Corp.,*
428 F. Supp. 2d 188 (S.D.N.Y. 2006) .......................................................................... 6, 7

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004) .......................................................................................................... 7

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP.,*
376 F.3d 79 (2d Cir. 2004) ............................................................................................... 7

**STATUTES**

28 U.S.C. § 1782 ............................................................................................. *passim*

Fed R. Civ. Proc. 45 .................................................................................................. 1

Subpoenaed parties International Gemological Institute, Inc. ("IGI"), Jerry Ehrenwald ("Ehrenwald"), John Li ("Li"), Kimberly Nairn ("Nairn"), Carol Lorié Low ("Carol Low") and Joseph Low ("Joseph Low," and together with IGI, Ehrenwald, Li, Nairn and Carol Low, "Subpoenaed Parties"), submit this memorandum of law in support of their motion (the "Motion") pursuant to Rule 45 of the Federal Rules of Civil Procedure (1) to vacate an Order of this Court dated July 28, 2014 (the "Order"), which granted an *ex parte* application made by Petitioners Real Estates Internationals S.A.-S.P.F. ("REI") and Marc Brauner ("Brauner," and together with REI, "Petitioners") pursuant to 28 U.S.C. § 1782 ("Section 1782") and authorized Petitioners to serve subpoenas purportedly in aid of a foreign litigation and (2) to quash the resulting subpoenas for the production of documents and taking of oral testimony that Petitioners served on Subpoenaed Parties (the "Subpoenas").[1]

The Order was made following an *ex parte* application to this Court (the "Section 1782 Application"), in which Petitioners sought discovery purportedly in aid of a proceeding that Petitioners previously commenced (also *ex parte*) in Luxembourg (the "Luxembourg Proceeding"). At the time Petitioners made the Section 1782 Application, however, the Luxembourg Proceeding -- for which the discovery supposedly would serve as an aid -- already had been completed, and Petitioners already had been granted the relief they requested in that proceeding. Petitioners also never sought or obtained an order from the judge presiding over the Luxembourg Proceeding permitting them to take discovery in that proceeding, as is required under Luxembourg law. Apparently concerned because their *ex parte* order in Luxembourg is subject to attack in that country -- and with discovery in Luxembourg unavailable to them because of their own procedural decisions -- Petitioners then decided to seek here what they

---

[1] After obtaining the Order, Petitioners apparently issued eight subpoenas in total. The present Motion is brought only with respect to the Subpoenas issued to the six moving Subpoenaed Parties.

cannot get there, and bombarded Subpoenaed Parties with overly broad, unduly intrusive and burdensome discovery, the taking of which would contravene applicable Luxembourg law and constitute nothing more than a fishing expedition.

For the reasons stated below, including that the *ex parte* Section 1782 Application was an attempt to circumvent proof-gathering rules in Luxembourg, that the Subpoenas will unduly burden the Subpoenaed Parties with sweeping discovery demands, and that Luxembourg does not provide discovery to U.S. citizens reciprocal to that provided in Section 1782, the Order should be vacated and the Subpoenas should be quashed.

## STATEMENT OF FACTS

Petitioners commenced the Luxembourg Proceeding *ex parte* in a district court in Luxembourg on July 17, 2014. In that proceeding, Petitioners sought and obtained the appointment of a "provisional director" for a Luxembourg Corporation named Vazon Investments, S.A. ("Vazon"). Declaration of David J. Eiseman, dated August 14, 2014 ("Eiseman Decl.") Ex. A (Petitioners' Luxembourg Application) at 3; Ex. B (Luxembourg Order). Brauner, through REI, holds a minority interest in Vazon. One of Vazon's three subsidiaries is IGI, a corporation organized under the laws of New York. IGI is owned 50% by Vazon and 50% by Ehrenwald. Petitioners' Memorandum of Law at 3.

In the Luxembourg Proceeding, Petitioners alleged that the appointment of a "provisional director" for Vazon was necessary to ensure that IGI was being properly managed. Eiseman Decl. Ex. A (Petitioners' Luxembourg Application) at 3. Brauner alleged that Roland Lorié ("Lorié"), who owns a majority interest in Vazon (through a company named Berkshire) was mismanaging IGI and other entities in which Vazon holds an interest (the "IGI entities").

On July 21, 2014, the court in Luxembourg issued an order granting Petitioners' *ex parte* application and appointing a provisional director to: (i) administer and manage the

affairs of Vazon; (ii) ensure that the IGI entities have been properly managed over a certain period of time, and (iii) take any steps necessary to carry out the aforementioned two duties (the "Luxembourg Order"). Eiseman Decl. Ex. B (Luxembourg Order).

In their Section 1782 Application to this Court, Petitioners asserted that because the Luxembourg Order was entered *ex parte*, Berkshire and/or Vazon have the right under Luxembourg law to commence a proceeding challenging the Luxembourg Order and to seek to have it vacated. Declaration of Francois Reinard, dated July 24, 2014 (the "Reinard Declaration") ¶ 6.[2] Petitioners also asserted that upon the initiation of such a proceeding, a hearing will be held before the Luxembourg court, at which time Petitioners, and any interested opposing parties with standing, will be given the opportunity to present evidence concerning the propriety of the Luxembourg's determination to appoint a provisional director for Vazon. *Id.*

On July 28, 2014, a week after the issuance of the Luxembourg Order, Petitioners filed the Section 1782 Application with this Court seeking an order permitting them to serve the Subpoenas on Subpoenaed Parties in aid of the Luxembourg Proceeding. At that time, there was no proceeding pending in Luxembourg. Declaration of Annie Elffasi, dated August 14, 2014, submitted herewith ("Elfassi Decl.") ¶ 6. Neither had Petitioners sought or obtained an order from the judge presiding over the Luxembourg Proceeding permitting them to take discovery in connection with that proceeding, which is a requirement under Luxembourg law. Elfassi Decl. ¶¶ 8, 9.

In their Section 1782 Application to this Court, Petitioners asserted that they need discovery from Subpoenaed Parties in aid of an anticipated challenge to the Luxembourg Order. This Court (Part I), without comment, granted the Section 1782 Application on the same day it

---

[2] The Reinard Declaration was submitted in support of the Section 1782 Application. In citing to that Declaration, Subpoenaed Parties do not concede the accuracy of its statements.

3

was filed. *See* Eiseman Decl. Ex. C (the Order). Counsel for Petitioners then served six Subpoenas on Subpoenaed Parties, demanding the production of eight (and in one case, nine) categories of documents, with a return date for the production of documents from two of the subpoenaed parties set for two business days after service of the subpoena and the depositions of three of the Subpoenaed Parties set to commence four business days after service, with the others to follow.[3]

As the Subpoenas reflect, Petitioners adopted the blunderbuss approach. The Subpoenas call for documents for a time period of ten years. *See* Eiseman Decl. Exs. D-I. The Subpoenas demand responses to patently overbroad, unduly intrusive and burdensome document requests, with virtually identical requests being made to each subpoenaed party. Petitioners offered no explanation for making identical demands on each Subpoenaed Party, despite the fact that it is clear that there is no basis whatsoever for certain of the Subpoenaed Parties to have any responsive documents. In the Subpoenas, Petitioners demand that each Subpoenaed Party produce "[a]ll documents" over a period of ten years concerning: (1) credit memos or rebates issued to customers of any of the IGI entities; (2) a safe deposit box opened in the name of Carol Low in Belgium, (3) charitable donations made by any of the IGI entities; (4) loans to Ehrenwald from any of the IGI entities; (5) funds or revenue transferred to Lorié; (6) communications between Lorié and Ehrenwald concerning requests made by Petitioners for information or documents about the financial condition or operations of any of the IGI entities; (7) communications between Lorié and Li or other employees of any of the IGI entities concerning the aforementioned requests for information made by Petitioners; and (8) communications

---

[3] Following objection by Subpoenaed Parties' counsel during phone calls with Petitioners' counsel, the return dates for all Subpoenas were adjourned, with the first three depositions adjourned to August 18, 2014. Eiseman Decl. ¶ 7.

between Lorié, Li or Ehrenwald, on the one hand, and a former IGI employee, Nairn, a foreign mediator and/or IGI's accountant, concerning any of the topics specified in document request numbers 1 through 7. In addition, Petitioners demanded ten years of tax filings and financial statements from IGI.

The breadth of these demands is remarkable. In addition to demanding documents concerning every charitable contribution made by IGI in the last ten years, they demand documents concerning a safe deposit box in yet another foreign country, without articulating an inkling of what it is they are looking for. They demand every single communication over ten years between IGI's employees and its co-owners regarding the broad topics of their other demands. As is shown more fully below, the lack of specificity in the Subpoenas demonstrates that Petitioners are simply casting as wide a net as they can in the hopes of snagging some piece of information that might be relevant to the Luxembourg proceeding, even as they are unable to articulate in the Subpoenas what that information might be.

Petitioners served these broad requests on all Subpoenaed Parties, without regard to whether any particular Subpoenaed Party might have responsive documents. Petitioners offer no reason as to why any Subpoenaed Party other than Carol Low would have documents concerning a safe deposit box in her name in Antwerp. Petitioners offer no reason as to why any Subpoenaed Parties other than Ehrenwald might have possession of communications between Lorié and Ehrenwald. Petitioners offer no reason as to why any Subpoenaed Parties other than Li or Ehrenwald might have possession of communications between Lorié, Li or Ehrenwald. The Subpoenas were obviously issued without regard to tailoring each Subpoena to the Subpoenaed Party to which it was addressed.

Importantly, for purposes of this motion, the Subpoenas seek discovery that would not be permissible under Luxembourg law. Submitted herewith is the Declaration of Annie Elfassi, a Luxembourg attorney. As she explains, Petitioners are impermissibly attempting to gather evidence in support of their Luxembourg Application after it has already been resolved. Moreover, even if the Luxembourg Proceeding were deemed to be continuing, any discovery would be permitted only upon order by the Luxembourg judge. There is no such order. Elfassi Decl. ¶¶ 8-9.

## ARGUMENT

### I.  STANDARDS FOR GRANTING AN APPLICATION PURSUANT TO 28 U.S.C. § 1782

28 U.S.C. § 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." *Id.* "A district court is authorized to grant a § 1782 request when the petitioner demonstrates '(1) that the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) that the discovery [is] for use in a proceeding before a foreign tribunal, and (3) that the application [is] made by a foreign or international tribunal or any interested person.'" *In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *3 (S.D.N.Y. July 9, 2014).

However, "a district court is not required to grant a § 1782 discovery application simply because it has the authority to do so." *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006). "[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion. This discretion, however, is not boundless. Rather, . . . district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing

efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 83-84 (2d Cir. 2004) (internal citation and quotation marks omitted). Also, before deciding to utilize its discretion to grant an application under Section 1782, the district court must first review the four factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Those factors are:

> (1) Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid; (2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) Whether the § 1782 request conceals a attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) Whether the subpoena contains unduly intrusive or burdensome requests.

*In re Microsoft Corp.*, 428 F. Supp. 2d at 192-93 (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. at 264-65).

## II. THIS COURT SHOULD VACATE THE ORDER AND QUASH THE SUBPOENAS

### A. Petitioners' Section 1782 Application is a Blatant Attempt to Circumvent Luxembourg Proof-Gathering Restrictions

The third *Intel* factor weighs heavily against the appropriateness of Section 1782 relief, because Petitioners' Section 1782 Application is a blatant end-run around Luxembourg proof-gathering restrictions. In their *ex parte* application to this Court, Petitioners argued that this *Intel* factor weighs in favor of granting the Section 1782 Application, "because there is no basis to conclude that the Court's assistance would offend or violate the policies of Luxembourg." Petitioners' Memo of Law at 11. Petitioners' self-serving and conclusory assertion, however, does not make it so. And it is not.

7

Contrary to Petitioners' conclusory assertions, the Section 1782 Application circumvents Luxembourg proof-gathering restrictions in two ways. First, it violates Luxembourg's policy of not permitting discovery after a proceeding has been resolved. As Ms. Elfassi states in her Declaration, the Luxembourg court's issuance of an order granting Petitioners' application for a provisional director resolved that proceeding. Elfassi Decl. ¶ 6. No discovery device in Luxembourg allows a party to obtain evidence after a proceeding has been resolved. *Id.* ¶ 7. Second, even if the Luxembourg Proceeding were still pending -- which it is not -- Petitioners would have to obtain an order from the Luxembourg court to pursue such evidence. *Id.* ¶ 8. There is no such order from the Luxembourg court. *Id.* ¶ 9.

Finally, it is worth noting that although Luxembourg is a party to the Hague Convention, Luxembourg courts will not issue Letters of Request in order to take evidence abroad in connection with a Luxembourg civil proceeding. *Id.* ¶ 12. Thus, even if Petitioners had approached the Luxembourg court to request that it issue letters or a commission to aid Petitioners in obtaining evidence in the United States, that request would have been denied. The Luxembourg court would not have sought the assistance of this Court in obtaining the evidence that Petitioner seeks through the Subpoenas.

Because Petitioners' Section 1782 Application concealed Petitioners' attempt to circumvent Luxembourg's proof-gathering procedures, the Order should be vacated and the Subpoenas should be quashed.

**B.    The Discovery Sought in the Subpoenas Is A Fishing Expedition**

The Fourth *Intel* Factor also weighs heavily against the propriety of Petitioners' Section 1782 Application and the resulting issuance of the Subpoenas in aid of the Luxembourg Proceeding.

8

There is no basis for Petitioners to have issued six non-party subpoenas -- one to IGI and another five to individuals -- when the only ostensible connection of each of them to the issue in dispute is nothing more than the non-party's employment or spousal relationship to IGI. Likewise there is no justification for demanding *ten years'* of documents from each non-party, including documents that could not possibly be in the possession of some of them.[4] The allegations made by Petitioners in their Section 1782 Application in no way justify the overly broad, unduly intrusive and burdensome discovery sought in the Subpoenas, even if those allegations are taken at face value. There is no allegation that any of the Subpoenaed Parties took part in any of Roland Lorié's alleged wrongdoing. Indeed, Petitioners do not even bother to set out the topics on which they intend to depose Subpoenaed Parties. Petitioners simply served broad and identical subpoenas on IGI and five individuals, with the only offered justification being that *some* of those parties *might* have information relevant to the Luxembourg Proceeding.

Similarly, the document requests contained in the Subpoenas are nothing more than a fishing expedition. It is well settled that "if the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." *In re Ex Parte Shagang Shipping Co., Ltd.*, 2014 WL 1744264, at *2 (S.D.N.Y. Apr. 28, 2014). Here, three circumstances demonstrate that Petitioners' Section 1782 Application was inappropriate.

---

[4] In a meet and confer session, Petitioners' counsel stated that Petitioners are demanding ten years' worth of documents because the Luxembourg court gave the appointed "provisional director" the power to look back ten years in his investigation of Roland Lorié's management of Vazon. Even if that is the case, Petitioners have not demonstrated why the ten-year period established by the Luxembourg court for the provisional director is a necessary or appropriate scope for the discovery demands made on each of the Subpoenaed Parties.

First, the Subpoenas are so broad that they obviously are intended to serve as a fishing expedition. There is a complete absence of specificity in the Subpoena's demands. Indeed, Petitioners themselves conceded in their Application to this Court that they have sought "general categories" of documents; there has been no attempt at specificity. Petitioners' Memorandum of Law at 8. The intent of the Subpoenas is to cast as wide a net as possible over broad swaths of information in the hope that, somehow, some relevant piece of information will emerge.

Second, the document requests contained in the Subpoenas are not tailored to the Subpoenaed Parties on whom they were served. For example, the Subpoenas demand that all Subpoenaed Parties produce documents concerning loans to Ehrenwald from any IGI affiliate, when there is no reason why any of the subpoenaed persons other than Ehrenwald should have possession of such documents. The lack of any regard for tailoring each Subpoena to its recipient shows that Petitioners are casting about with no real focus or common-sense limitations, and simply fishing in the hope that they catch some item of relevant information.

Finally, the requests concerning a safe deposit box in Carol Low's name in Antwerp and the loans made by IGI to Ehrenwald are unduly intrusive, seeking information personal to those two Subpoenaed Parties.

In short, there is little doubt that the document requests contained in the Subpoenas are "broad by any standard," and thus improper. *See, e.g., In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) (finding the subpoena requested pursuant to a Section 1782 application to be broad by any standard where the requests extended to a wide array of documents, related to tens of business entities and to all of their affairs).

10

The Section 1782 Application was clearly made by Petitioner to seek documents and information on the off chance that they might find something relevant to the Luxembourg Proceeding, without regard to the burden or intrusion imposed upon Subpoenaed Parties, who are not parties to the Luxembourg Proceeding. The Subpoenas should, therefore, be quashed and the Order vacated. *See In re Ex Parte Shagang Shipping Co., Ltd.*, 2014 WL 1744264, at *2 ("[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation.").

### C. Luxembourg Does Not Have a Law Equivalent to Section 1782

The Second Circuit has directed that "district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz*, 376 F.3d at 84. Luxembourg does not have a law equivalent to Section 1782, and a United States litigant is not able to seek an order from a Luxembourg court permitting the issuance of a subpoena or similar instrument compelling a Luxembourg resident to submit to a deposition or produce documents in aid of a proceeding in the United States. Elfassi Decl. ¶¶ 10-14. This cuts directly against the "twin aims of the statute," which are directed towards reciprocal cooperation between jurisidictions, and therefore further weighs against the granting of Petitioners' application for the issuance of the Subpoenas.

11

## CONCLUSION

For all of the above-stated reasons, this Court should vacate the Order and quash the Subpoenas issued to Subpoenaed Parties.

Dated:  New York, New York         GOLENBOCK EISEMAN ASSOR
        August 14, 2014              BELL & PESKOE LLP

By:   /s/ David J. Eiseman
      David J. Eiseman

437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 907-7300

*Attorneys for Subpoenaed Parties International Gemological Institute, Inc., Jerry Ehrenwald, John Li, Kimberly Nairn, Carol Lorié Low and Joseph Low*

12